UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| RON MORRIS, | ) | | |
| | ) | | |
| Plaintiff, | ) | 16 C 2889 | |
| | ) | | |
| vs. | ) | Judge Gary Feinerman | |
| | ) | | |
| RANDALL S. KNUTSON, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

Ronald Morris brought this *pro se* suit against Randall Knutson, a former officer in the

International Association of Sheet Metal, Air, Rail and Transportation Workers-Transportation

Division ("SMART-TD").  Doc. 8.  Morris drafted his complaint on this District's form for *pro

se* 42 U.S.C. § 1983 suits, but Knutson is not a state official and SMART-TD is not a state entity,

so Morris has no viable § 1983 claim.  The narrative portion of the complaint alleges that

Knutson ineptly presented Morris's case to the arbitrator assigned to hear his challenge to BNSF

Railway's termination of his employment.  As the court explained on the record at a status

hearing early in the case, Doc. 19, this means that Morris's claim actually is for violation of the

duty of fair representation that unions owe union members under the Railway Labor Act

("RLA"), 45 U.S.C. § 151 *et seq*.  *See Sweeney v. Pence*, 767 F.3d 654, 672 (7th Cir. 2014).

Knutson moved to dismiss the suit under Federal Rule of Civil Procedure 12(b), arguing

that the union, not Knutson himself, is the proper defendant, and that Morris's fair representation

claim is time-barred in any event.  Doc. 20.  In an order issued days later, the court deemed

Morris's suit to have been brought against both Knutson and the union, thus eliminating the first

ground for dismissal.  Doc. 24.  Dismissal is appropriate, however, on limitations grounds.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N.*

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in Morris's brief opposing dismissal, so long as those additional facts "are consistent with

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The

facts are set forth as favorably to Morris as those materials allow. *See Pierce v. Zoetis*, 818 F.3d

274, 277 (7th Cir. 2016).

BNSF employed Morris until it terminated him on April 30, 2013 for violating a train

speed rule. Doc. 31 at 1, 7. During a discussion with Scott Anderson, a SMART-TD official,

about challenging the dismissal, Morris emphasized the importance of removing from his record

as many past infractions as possible prior to presenting his case to the Public Law Board

("PLB"), the body charged with arbitrating the challenge to his termination. *Id*. at 1; *see* 45

U.S.C. § 153 (establishing the arbitration process for railroad employees). Morris sent Anderson

a list of his past infractions, and Anderson confirmed receipt, stating that one of them was "due

to be removed from [his] disciplinary record." Doc. 31 at 1.

On November 29, 2014, the PLB denied Morris's appeal. *Id*. at 2. The PLB found that

termination was appropriate because: Morris "had the responsibility to notify the engineer of

speed restrictions and if the train was exceeding those restrictions to place the train into

emergency"; he "went through a 30 mile per hour Form A, operating up to 40 miles per hour";

"[t]he crew was operating a key train (86 cars of hazardous material), and as a result, were

required to slow to 10 miles per hour before entering the siding at Mored (MP 58.99)"; and "[t]he train entered the siding at 22 miles per hour and traveled 1,200 feet before slowing to 10 mph." Doc. 21-2.

On November 30, 2014, Anderson emailed Morris a copy of BNSF's dismissal notice, together with "the documents [that Morris] later discover[ed] were given [by the union] to the arbitrator," but not the arbitrator's decision. Doc. 31 at 2. Morris reviewed "the first few pages of the documents that [he] *now* knows[s] were provided to the arbitrator, and at the time [he] did not think much of it because it was not from the arbitrator …." *Ibid*. (The November 30, 2014 email and its attachment are reproduced at Doc. 21-3.) In March 2015, after numerous attempts, Morris reached Anderson, who informed him that the appeal had been denied. Doc. 31 at 5. Later that month, Anderson emailed Morris "[t]he award letter confirming the arbitrator[']s decision," as well as "the documents [that the union] provided to the arbitrator." *Ibid*. At that time, Morris did not read those documents because he "did not feel it would help and it definitely wouldn't change the decision the arbitrator made." *Ibid*.

In April 2015, shortly after he filed a discrimination suit against BNSF, *see Morris v. BNSF Ry.*, 15 C 2923 (N.D. Ill.) (Gottschall, J.), other former and current BNSF employees told Morris that he "should seriously consider including the union in the lawsuit [he] had against the company." Doc. 31 at 6. In August 2015, Morris provided the attorney handling his discrimination suit all documents that the union had sent to him concerning the arbitration. *Id*. at 7. The attorney told Morris that the documents included a statement admitting Morris's guilt for the train speed violation that predicated his termination. *Ibid*. Morris maintains that he never admitted his guilt for that offense and that he in fact was not guilty. *Id*. at 8.

In September 2015, Morris asked the union whether his prior disciplinary reprimands had been appealed or otherwise removed from his personnel record. *Id*. at 11. On October 5, 2015, Anderson emailed Morris to say that his office had never received a request to appeal a September 2011 formal reprimand, which concerned Morris's failure to report to work. Doc. 31-2 at 2, 4-5. Morris maintains that had the union successfully appealed his prior infractions, the appeal of his April 2013 termination would have succeeded. Doc. 31-3.

## Discussion

Morris filed this suit on March 7, 2016. Doc. 1. The complaint alleges that Knutson represented him during the arbitration challenging his termination. Doc. 8 at 4. The complaint further alleges: "Prior to the Arbitration [Morris] presented [Knutson's] office with a lot of documentation that supported [his] defense against the company, [but] those documents were not considered[,] which was very evident in the submissions given to the Arbitrator, which gave him a reason to side with the company …." *Ibid*. The complaint continues: "During this time I had been misled, information was withheld from me, I received [the union's] submission letter only after [the] decision by [the] Arbitrator was made, approx 9/15 and other information late last year of 2015." *Ibid*. The gist of the suit is that the union (through Knutson) did not include with its submission to the arbitrator all materials that should have been included.

Knutson argues that Morris's fair representation claim is barred by the statute of limitations. Doc. 21 at 4-6. A Rule 12(c) motion might have been a more appropriate vehicle for this argument. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to

the complaint."). Still, no rule categorically prohibits suits from being dismissed on limitations grounds under Rule 12(b)(6). As the Seventh Circuit has repeatedly held, "if it is plain from the complaint that the defense is indeed a bar to the suit[,] dismissal is proper without further pleading." *Jay E. Hayden Found.*, 610 F.3d at 383; *see also Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[D]ismissal is appropriate [under Rule 12(b)(6)] *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense."); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) ("[A] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.") (internal quotation marks omitted); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.").

The statute of limitations for an RLA fair representation claim is six months. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983); *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985). Morris filed this suit on March 7, 2016, so the suit is timely only if his fair representation claim accrued on or after September 8, 2015.

A fair representation claim accrues when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged breach of duty." *Dozier*, 760 F.2d at 851 (alteration omitted). When a union member claims that the union violated its duty in connection with representing him in a labor arbitration, accrual generally occurs when the arbitral body makes its final decision. *See Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1247 n.13 (7th Cir. 1990) ("[A]n arbitrator's award is considered final …

and … the statute of limitations period [for a fair representation claim] begins on the date of the award."); *Freeman v. Local Union No. 135*, 746 F.2d 1316, 1319 (7th Cir. 1984) (noting that "[p]laintiff's cause of action [for an alleged violation of the fair representation duty] accrued when the arbitrator reached a final, binding decision"). However, if the facts underlying the alleged breach are unknown to the plaintiff, the limitations period does not commence until the plaintiff learns those facts or could have discovered them through reasonable diligence. *See Pisut v. United Transp. Union*, 2014 WL 714405, *2-3 (N.D. Ill. Feb. 25, 2014) (holding that the limitations period did not begin to run where the plaintiff, a railway employee, repeatedly asked the union, without success, for information on the status of the appeal of his termination).

Here, the PLB issued its final decision on November 29, 2014. That did not start the limitations period, however, because Morris's fair representation claim alleges that the union did not submit the proper materials to the PLB, and Morris asserts that he was unaware for some time as to which materials the union had submitted. Doc. 31 at 2; Doc. 31-2 at 1. Knutson counters that Morris was "well-aware of what was submitted and argued" at the arbitration and that on November 30, 2014, Morris was emailed a copy of the union's arbitral submission. Doc. 21 at 5. It is true that Morris acknowledges in his opposition brief that he received those documents on November 30, 2014. Doc. 31 at 2. It also is true that a plaintiff's factual statements in an opposition brief are fair game on a Rule 12(b)(6) motion. *See Phillips*, 714 F.3d at 1020. However, Morris asserts that he was not informed on November 30, 2014 that his appeal had been denied, so he arguably had no reason to know at that point that the union had allegedly breached its fair representation duty; after all, if the appeal had succeeded, Morris would have had no viable fair representation claim.

6

The point is immaterial, however, because Morris also acknowledges that in March 2015, Anderson told him that the arbitrator had denied his appeal and emailed him both the arbitrator's decision *and* a copy of "the documents provided [by the union] to the arbitrator." Doc. 31 at 5. (Again, this statement from Morris's opposition brief is fair game on a Rule 12(b)(6) motion. *See Phillips*, 714 F.3d at 1020.) Morris thus had all the information he needed in order to know what the union had submitted to the arbitrator—including the union's admission that Morris was guilty of the train speed violation, and the union's failure to address or challenge his prior reprimands. That Morris chose not to read those documents at that time because "[he] really did not feel it would help and it definitely wouldn't change the decision the arbitrator made," Doc. 31 at 5, does not alter the fact that in March 2015, Morris had before him all of the materials necessary to reasonably put him on notice of "the acts constituting the alleged breach of [Knutson's and the union's fair representation] duty." *Dozier*, 760 F.2d at 851.

With his claim having accrued in March 2015, Morris had until September 2015 to bring suit. By the time he filed this suit in March 2016, the limitations period had long since passed. Accordingly, the suit is barred by the statute of limitations.

### Conclusion

Knutson's motion to dismiss is granted. Because a dismissal on limitations grounds cannot be cured by repleading, the dismissal is with prejudice. *See Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996). Judgment will be entered in favor of Knutson and against Morris.

December 5, 2016

_____
United States District Judge